Michael P. Thorman, State Bar No. 63008
BONJOUR, THORMAN & BURNS
24301 Southland Drive, Suite 312
Hayward, CA 94545
Tel: (510) 785-8400
Fax: (510) 670-0955
michael@btandblaw.com

Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 2:10-CR-0144 WBS |
| Plaintiff, | |
| vs. | DEFENDANT'S SENTENCING MEMORANDUM |
| ANTHONY B. GHIO | Sr. Judge: William B. Shubb |
| Defendant. _____ / | |

## INTRODUCTION

Defendant Anthony Ghio was convicted by his plea to a one-count Information charging a violation of 15 U.S.C. § 1, bid rigging. He entered his guilty plea on April 16, 2010. His sentence has been delayed for over six years, during which time he has provided substantial assistance to the Government in its prosecution of other participants in the bid rigging scheme. Mr. Ghio testified at trial of some other defendants in January, 2014. While that trial resulted in convictions for two defendants, sentencing was further postponed based on post-conviction proceedings that have not yet been concluded.

Having heard the trial, including Mr. Ghio's testimony, as well as post-conviction motions, the Court has detailed knowledge of the operation of the bid rigging scheme and Mr. Ghio's role in it. The Court also has the benefit of the Presentence Report and Mr. Ghio's motion to correct it that further add information on the offense and Mr. Ghio's role. Finally, the Court has the benefit of the Government's motion for downward departure pursuant to USSG § 5K1.1,

detailing the substantial assistance Mr. Ghio has provided. This memorandum intends not to repeat what the Court already knows and what has already been said.

This memorandum will address the 18 U.S.C. §3553(a) factors which we believe justify a sentence below that recommended by the government in its 5K1.1 motion. In doing so, we will address Mr Ghio's efforts over the past almost seven years to re-establish his honor and moral standing in his community, the effect this isolated instance of poor judgment has had on him, and the impact incarceration will have on his family. Finally, we will propose specific sentencing recommendations.

## 18 U.S.C. § 3553(a) FACTORS

**History and Characteristics of the Defendant**

One of the factors for the Court to consider in 18 U.S.C. 3553(a) is the history and characteristics of Mr. Ghio. While the PSR provides general background information and the government's 5K1.1 motion likely will describe his extensive cooperation efforts, they do not give a full measure of the man.

It cannot often be said of a criminal defendant, but Tony Ghio is a man of honor and integrity. We have provided the Court, through the Probation Department, with numerous letters from friends, business associates and family attesting to this fact. Annette Fisher, Assistance Manger/Vice President of the Bank of Stockton, who had worked with Mr. Ghio and his family for 15 years as of May, 2014 when she wrote a character letter for him, stated:

> "I have worked closely with Tony for over a decade and we have become good friends. He has never asked me to bend any rules for him or asked me to do anything unethical. I feel he is a proud man and his word is everything to him."

Carlo Franzia, a former Navy Seal who now owns several businesses and works in the family winery business, stated:

> "Truth: I will put my reputation on the line for this man. Tony carries with him the character, spirit and heart of a Navy Seal. Based off his integrity and trustworthiness, I would go to combat with him and serve with proudly."

Mr. Ghio's involvement in this offense was a serious error in judgment. He had deluded himself into believing his conduct was legal. Indeed, one of the other bid-rigging participants claimed to have talked with a lawyer who said that what they were doing was legal. However,

*USA v. Ghio*
Sentencing Memorandum 2:10-CR-0144              2

after learning about the criminal investigation in October, 2009, and after consulting with counsel, Mr. Ghio realized that his participation in the bid-rigging scheme was illegal. Characteristic of the man he is, his first reaction was to make amends for his wrongful conduct. He readily agreed to cooperate with the government in the prosecution of others. While he recognized that doing so could favorably affect his sentence, he was motivated by something more. He was ashamed and embarrassed that by his conduct; he had brought dishonor on himself and his family. He felt it was important to make amends for his conduct by being honest and forthright about what he had done, and perhaps in the process regain some measure of his lost dignity.

As the Court is aware, Mr. Ghio kept records of all of the second rounds of bidding between May 20, 2009 and September 29, 2009 in which he participated. He did this to keep track of who owed money to whom as well as for tax purposes. He issued 1099 forms to participants he paid and declared income he had made in the second rounds in his tax returns. He offered his records to the government as a token of his cooperation.

Mr. Ghio was one of the first defendants to meet with the government. He did so before he knew what evidence the government possessed and before he and counsel could evaluate the strength of the government's case against him. He did so because he felt it was the right thing to do. The submitted character letters reflect this as well. One example is contained in the letter from Douglass Eberhardt, employed by the Bank of Stockton for 31 years and currently its president. As he explains:

> "In the latter part of 2009, Tony disclosed to theh Bank that he believed he was in trouble for actions taken at Trustee's Sales. After his first meeting with the Government he confirmed to us that he had broken the law and was in fact going to plead guilty. The next business day following his guilty plea he was in our conference room at the Bank explaining the ramifications of his actions and asking us what he needed to do to make sure that he remained in good standing with the Bank of Stockton. The Bank required him to pay off his Business Line of Credit ($300,000.00 at the time) within 90 days. He repaid his debt well before the end of 90 days. Never during these meetings nor to this day has he denied being involved in the illegal actions at the courthouse, nor has he gone back on his word."

Mr. Ghio's efforts to assist the government were more than acts designed to get a favorable 5K1.1 recommendation; they were acts of atonement. As Mr. Ghio explains in his

letter to the court, supplied to the Probation Department, he prepared a 23-page spreadsheet listing the properties that had been purchased at public auctions and had gone through the round robins in which he or his partner, John Vanzetti, were involved. He also provided 75 pages of original bid sheets detailing the 209 second auctions. Over the next four years, he met with Government lawyers for 6 full days to help them prepare their case, and spent what he estimates to be at least 100 hours preparing for those meetings. He then testified as one of the Government's central witnesses. The value of those efforts will be reflected in the Government's 5K1.1 motion and was evident to the Court during Mr. Ghio's testimony.

      Another measure of his remorse and desire to regain his reputation is the statements of many friends and colleagues contained in the submitted letters. Dr. MaryRose Bautista, an attending physician for the VA PaloAlto Health Care System, states:

> "Tony has always accepted full responsibility for his actions. He has never made excuses but has carried his shame and embarrassment for his action for others to see."

Kevin Snider, a school teacher with the Stockton Unified School District, states:

> "Tony and I have had many lengthy conversations regarding the crime for which he has admitted guilt. He has never once denied, in my presence, the role in which he played regarding these activities for which he has been charged. Tony has always stated that he wanted to make things right and was sorry for those he may have financially harmed."

Most telling, perhaps, of the seriousness of Mr. Ghio's efforts and the quality of his character are the words of Douglass Eberhardt of the Bank of Stockton:

> "Due to his character and how he has handled this situation, he is welcome to do business with the Bank of Stockton, including borrowing additional funds."

      Mr. Ghio's character is also reflected in his dedication to his family and community. As Mr. Ghio describes in his letter to the Court:

> "I remain very active in my children's lives (Hannah 11 and Max 6). I work at their school when parental help is needed. I donate books, toys and school supplies when they ask or when we have extra that may benefit the school or parish. I take my kids to, and pick them up from, school 3 or 4 days a week. I almost daily take one of them to their after school activities. I have helped coach their basketball, t-ball, soccer, karate and jiujitsu. I take them and their friends to the pool, and on boating, fishing and camping trips. I lightly expose them to the ugliness of our business so they can see what laziness, drug use and alcohol abuse will lead to. Daily I try to instill the difference between right and wrong."

The people who have written letters on his behalf know him through church, through his

children's school activities and through their children's extracurricular activities. They describe a man who is generous of his time and effort in community affairs. They also comment on the loss to the community and the potential damage to Mr. Ghio's family and particularly his children should he be incarcerated. ("The impact of jail time to those around Tony will be significant, especially to his wife Candice, as well as Hannah and Max." Lynn Fearn, owner of ICG Consulting; "In my humble opinion, incarceration will not increase Tony's understanding of the law and will only serve to burden and punish the family that relies on him on a daily basis." James Jimison, President Benchmark Communities, Central Valley Division; "Tony's absence from our Stockton community, from our church and school communities will be felt deeply. More importantly, I write this letter for his wife and children." Dr. MaryRose Bautista, Department of Veterans Affairs, Palo Alto VA Health Care System.)

During the more than six years that has passed since entering his plea, Mr. Ghio has continued to purchase real estate at Trustee's auctions. He has done so without any problems or even a hint of illegal behavior. Such conduct has, as noted above, regained the trust and confidence of the Bank of Stockton. Throughout it all, Mr. Ghio continues to be the sole source of financial and emotional support for his wife and children.

Mr. Ghio has made exceptional efforts to regain a place of honor and respect in his community. His "history and characteristics" merit a variance in his sentence.

**Other § 3553 factors**

To the extent that a sentencing goal is to have a defendant understand the seriousness of his offense and promote his respect for the law, that goal has already been achieved. Mr. Ghio says it succinctly: "Not a day has gone by when my actions and guilty plea have not haunted me." The truth of this statement is observed by his wife ("He knew he made a mistake, and the embarrassment alone was excruciating for him. The last seven years of remorse have really taken its toll. He fights depression and that flicker in his eyes has definitely dimmed."), business associates ("No amount of jail time or fine can rehabilitate him more than the stress the last six years has caused."- Douglass Eberhardt); ("I believe he has been much harder on himself than you can imagine."- Annette Fisher) or friends. ("[N]ot a single day passes by when he does not

beat himself up regretting his mistake."- Carlo Franzia).

Mr. Ghio's post offense conduct and the many character letters demonstrate that no sentence is needed to provide any further deterrence to him, and that the Court and the public need not fear future criminal conduct by Mr. Ghio.

We recognize that part of the goals set forth in § 3553 are not personal to the defendant but serve to represent the rule of law to the community in reflecting just punishment for an offense. The Court also must avoid unwarranted sentence disparity between multiple defendants. I suggest, however, that Mr. Ghio's post-offense conduct as described herein and by the government has been exceptional, and that a variance based on these circumstances is justified.

## SENTENCE RECOMMENDATIONS

Defendant's sentencing recommendation proceeds from the outset on the assumption that the PSR has been corrected as set forth by both Mr. Ghio and the Government to reflect a total offense level of 14, with a Criminal History category of 1. That results in a sentence range of 15-21 months, which sentence must be served in prison because the range is in Zone D.

The Government's USSG 5K1.1 request is for a 30% reduction to 10 months, essentially an offense level reduction to level 12. A sentence of that length is in Zone C, which would allow the Court to allow the defendant to serve up to 5 months of a 10 month sentence in home detention. Defendant requests such a "split" sentence should the Court accept the Government's recommendation.

Defendant submits, however, that the Government has been stingy in its percentage reduction in his case. While we have not seen the Government's actual 5K1.1 motion, based on conversations with the Government's lawyers, we believe they will accurately describe the extraordinary value of Mr. Ghio's assistance. He came in very early in the investigation and he provided the road map of the prosecution, the virtual smoking gun. We believe his cooperation was a substantial factor in causing many other bidding participants to come forward and resolve their cases. Finally, Mr. Ghio's testimony was truthful, detailed and effective, as the Court was able to determine. We believe that a reduction to a sentence of 8 months, almost a 50% reduction, will more accurately reflects the value of Mr. Ghio's cooperation.

If the Court concludes a further departure beyond what is requested by the Government is not appropriate, defendant requests a variance of one offense level below the level 12 requested by the Government, to impose a sentence of 8 months. For the reasons set forth in this memorandum, this variance is appropriate in this case.

A sentence of 8 months is in Zone B. Defendant is probation eligible since his offense under 15 U.S.C. § 1 is a Class C felony. Pursuant to USSG §5C1.1(c)(3), his sentence could be served by home detention, which is what we request. This would allow defendant to continue to support his family financially and emotionally, as is discussed in many of the character letters we have submitted.

**Other Conditions**

**RESTITUTION:** There is some confusion over the amount of restitution. The plea agreement called for Mr. Ghio to pay $214,000 in restitution. There is some suggestion that there was a reversal of the Ghio and Vanzetti restitution amounts and Ghio's is properly $271,454.43. Mr. Ghio has been ready to pay his share of restitution for the past 6 years, and has offered to do so multiple times. He will bring a cashier's check for $271,454.43 to his sentencing hearing, assuming that is the amount he is ordered to pay.

**FINE:** The plea agreement sets forth a fine of $20,000. Mr. Ghio will bring to his sentencing hearing a cashier's check for $20,000 to pay the fine. If the Court instead adopts the PSR formula of setting a fine at 2.5% of Mr. Ghio's volume of commerce calculation, the court must recalculate probation's fine figure because it was based on an inaccurate figure for volume of commerce, as discussed in defendant's Motion to Correct the PSR. The recalculated amount is $147,500. Defendant nonetheless requests the Court impose the fine set forth in the plea agreement.

**COMMUNITY SERVICE:** The PSR recommends 150 hours of community service with an organization such as Habitat for Humanity. If the Court orders community service, Mr. Ghio requests the opportunity to do so in a program that works with children.

**SPECIAL PROBATION CONDITIONS:** Defendant submits that none of the special probation conditions set forth in USSG 5B1.3(d) apply to him.

The standard firearms preclusion for convicted felons pursuant to 18 U.S.C. § 922(g) does not include persons convicted of an anti-trust offense. 18 U.S.C. § 921(a)(20). Mr. Ghio is a recreational hunter and sporting clay shooter. He also enjoys target shooting with his children and would like to continue to do so. While he must also be mindful of state law requirements, this conviction should not result in a federal firearms prohibition.

Mr. Ghio's payment of his restitution and fine obligation renders moot the debt obligation and access to financial information special conditions.

There is nothing to support a concern that Mr. Ghio is an abuser of narcotics or alcohol to support a requirement that he participate in a substance abuse program.

While Mr. Ghio admits to depression regarding his present circumstances, it does not rise to a level that suggests he is need of psychiatric or psychological treatment through probation.

## CONCLUSION

For the reasons set forth herein, Anthony Ghio respectfully requests that he be placed on probation with conditions that include eight months imprisonment that can be served on home detention, along with other conditions consistent with the plea agreement in this case and the matters set forth above.

Dated: September 6, 2016                    Respectfully Submitted:

BONJOUR, THORMAN & BURNS


    /s/ Michael P. Thorman
MICHAEL P. THORMAN
Attorney for Defendant, Anthony B. Ghio